UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSSEE
NASHVILLE DIVISION

| | |
|---|---|
| FADUMO SARDEYE, ) | |
| ) | |
|    *Plaintiff,* ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | CASE NO. _____ |
| WAL-MART STORES EAST, LP and ) | |
| WALMART INC., ) | |
| ) | |
|    *Defendant*. ) | |

## COMPLAINT

1. Plaintiff Fadumo Sardeye ("Plaintiff" or "Sardeye") brings this lawsuit against Defendants Wal-Mart Stores East, LP and Walmart Inc. (collectively, "Defendants" or "Wal-Mart") for violations of Title VII of the Civil Rights Act of 1964.

## JURISDICTION AND VENUE

2. Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. §§ 1331, 1343(a)(4).

3. Venue is proper in this district pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1391(b) & (c) because the unlawful employment practices alleged herein were committed wholly or primarily in the State of Tennessee.

## PARTIES

4. Plaintiff Fadumo Sardeye is a resident of Nashville, Davidson County, Tennessee. Plaintiff worked for Wal-Mart from 1999 through November 15, 2017.

5. Defendant Wal-Mart Stores East, LP is a Delaware limited partnership with retail stores throughout Tennessee. Its corporate headquarters is located in Bentonville, Arkansas.

1

6. Defendant Walmart Inc. is a Delaware corporation which operates retail stores throughout Tennessee. Its corporate headquarters is located in Bentonville, Arkansas.

## FACTS

### I. Plaintiff's National Origin and Religious Restrictions

7. Plaintiff Fadumo Sardeye was born in Somalia and moved to the United States in the early-1990s.

8. Plaintiff is a devout Muslim, and her religion prohibits her from eating or handling pork products and from drinking or handling alcohol.

9. Plaintiff wears a hijab as a religious practice, and Plaintiff always wore a hijab while working at Wal-Mart.

10. Plaintiff's religion also requires Plaintiff to take off from work to observe certain religious holidays, including Ramadan and Eid al-Adha.

### II. Plaintiff's Wal-Mart Employment in Memphis, Tennessee

11. Plaintiff began working for Wal-Mart at Store No. 1561 in Memphis, Tennessee (3950 Austin Peay Highway) in 1999.

12. Plaintiff worked at Store 1561 for approximately fifteen (15) years, from 1999 to October 19, 2014.

13. During this time period, Wal-Mart accommodated Plaintiff's religious practices.

14. At Store 1561, Wal-Mart ensured that Plaintiff did not have to work in the Grocery Department or as a Cashier, thereby ensuring that Plaintiff did not have to handle pork products or alcohol.

15. Wal-Mart also permitted Plaintiff to use vacation days to allow her to observe Ramadan and Eid al-Adha.

2

16.     As a result, Plaintiff was able to be a model employee for fifteen (15) years at Store 1561 while still practicing her religion and complying with its restrictions.

### III.  Plaintiff's Wal-Mart Employment in Knoxville, Tennessee

17.     In 2014, Plaintiff decided to move to Knoxville, Tennessee to be closer to her daughters, who lived in Knoxville.

18.     In June 2014, Plaintiff and her daughter visited Wal-Mart's personnel office at Store Number 2065, at 8445 Walbrook Drive in Knoxville, where they met with a human resources employee named Kelly.

19.     Plaintiff explained the nature of her religious restrictions, explained how Store Number 1561 had successfully accommodated her religious restrictions for many years, and asked if Store Number 2065 would also accommodate her religious restrictions if she transferred to that store. Plaintiff expressly stated to Kelly that she would only transfer to Store Number 2065 if the store agreed up front to accommodate her religious restrictions.

20.     Kelly responded that it would be "no problem" for Store Number 2065 to continue accommodating Plaintiff's religious restrictions in the same manner that Store Number 1561 accommodated Plaintiff's religious restrictions.

21.     In October 2014, Plaintiff moved to Knoxville, Tennessee, and Plaintiff began working at Store Number 2065.

22.     On Plaintiff's first day of work at Store Number 2065, Plaintiff was assigned to the Lawn and Garden department, but Plaintiff's manager assigned Plaintiff to complete cashier training on the front end cash registers. Plaintiff notified her manager that her religious restrictions prohibited her from handling pork products and alcohol, both of which are regularly purchased at the front end cash registers. As a result, Plaintiff asked to be trained on the Lawn

3

and Garden cash register, which would have avoided such contact. Instead, Plaintiff's manager trained Plaintiff on an empty front end cash register, which deprived Plaintiff of the benefit of training as a cashier with actual customers and their actual purchases.

23. In the Spring of 2015, Plaintiff submitted her yearly vacation request to use vacation days to observe Ramadan. This vacation request had been granted in Memphis every year for more than a decade, but Plaintiff received a letter on May 5, 2015 notifying her that her vacation request was denied. When Plaintiff addressed this problem with her assistant manager, Anna, Wal-Mart reversed course and approved the leave.

24. In September 2015, Plaintiff was promoted to CAP Team 1, which was a team that stocked shelves in general goods and grocery on shifts that ran from 4 am to 1 pm.

25. Plaintiff promptly reminded her supervisors that her religious restrictions prevented her from stocking groceries; and Plaintiff was therefore allowed to stock exclusively in the general goods departments.

26. Shortly after beginning her CAP Team 1 assignment, however, Plaintiff's coworkers became hostile and intimidating to Plaintiff because of the fact that they had to stock in the grocery department and general goods departments but Plaintiff only had to stock in general goods. The Store Manager, Willie Vestal, rather than addressing the problem with Plaintiff's colleagues, instead encouraged Plaintiff to leave the CAP Team. Plaintiff rebuffed this encouragement and stayed on the CAP Team.

27. Plaintiff's co-workers became increasingly hostile towards Plaintiff during the busy holiday season at the end of 2015, complaining again of the fact that Plaintiff did not have to work in the grocery department.

28. In early 2016, Plaintiff's co-workers continued to harass her about her religious accommodation. During this period of time, Plaintiff even faced complaints that she should act like her "Iraqi Muslim" coworkers, who did handle pork products and alcohol.

29. In April 2016, the Store Manager, Willie Vestal, called Plaintiff into his office and demanded that she bring textual proof from the Quran that she could not touch pork products or alcohol. Mr. Vestal further stated that Plaintiff would not be allowed to return to work until she returned with the proof he requested.

30. Facing this discriminatory request, Plaintiff enlisted her daughter to help her follow Wal-Mart's Open Door Policy to address this issue with managers above the store level. Plaintiff and her daughter contacted the Market Human Resources Manager, Charlotte Boyd, who ultimately sided with Mr. Vestal and confirmed that Plaintiff needed to submit paperwork in support of her religious restrictions. Ms. Boyd then provided Plaintiff with disability accommodation paperwork.

31. Plaintiff and her daughter thereafter sought to contact Wal-Mart's corporate office, including the Company's Global Ethics department. Plaintiff's daughter helped Plaintiff write a letter to this department detailing the discriminatory actions that Plaintiff was facing from her store management. Therein, Plaintiff expressly asserted her rights under Title VII, noting "Under the current hostile conditions in which Ms. Sardeye is forced to work, Wal-Mart is in violation of Ms. Sardeye's Title VII of the Civil Rights Act of 1964, . . ."

32. Ultimately, the corporate office sent an investigator who provided a verbal reprimand to the store managers, and the store managers pledged to accommodate Plaintiff's religious restriction moving forward.

33. After this intervention, Wal-Mart continued to treat Plaintiff differently than her colleagues. Notably, Wal-Mart reduced Plaintiff's hours of work and assigned her to work alone, with no support, more and more frequently.

34. In 2017, Plaintiff used approved vacation time to take off from work for Ramadan.

35. On the day before Plaintiff returned to work, Wal-Mart called to confirm that she should return to her normal schedule from 4:00 am to 1:00 pm.

36. When Plaintiff returned to work, she found that she had not actually been added back to the schedule. For several weeks, Plaintiff worked the 4:00 am to 1:00 pm shift, as instructed by her manager, but each day the manager had to manually override the system to allow Plaintiff to do so because she was not scheduled in the system.

37. After about three weeks, Wal-Mart put Plaintiff on the schedule, but Wal-Mart's scheduling system indicated she should report to work from 6:00 am to 3:00 pm. This schedule conflicted with the CAP Team 1 schedule that the Assistant Manager had communicated for CAP team members, of 4:00 AM to 1:00 pm. Therefore, Plaintiff asked her supervisor, Leo, what her schedule was, and he instructed her to work from 4:00 am to 1:00 pm, regardless of the computerized schedule and confirmed that the 6:00 a.m. to 3:00 p.m. schedule was in error.

38. After several days of working the 4:00 am to 1:00 pm shift as instructed, Plaintiff noticed that the scheduling system showed her as absent for the days she had worked. Plaintiff addressed this incorrect absence data with management, and they assured her that the absences were a mistake that would be fixed.

39. Despite following her supervisor's instructions, and despite working full shifts (from 4:00 am to 1:00 pm), Wal-Mart's attendance system recorded Plaintiff's 1:00 pm clock

outs as early departures, and assigned a 0.5 attendance point for each purported early departure. Apparently, this was the result of the computerized scheduling system incorrectly reflecting 6:00 a.m. to 3:00 p.m. as her scheduled time.

40. Wal-Mart also assigned a full 1.0 attendance point to Plaintiff when she took a day off to observe Eid al-Adha, a religious holiday, despite the fact that Wal-Mart had approved the absence.

41. On November 15, 2017, Wal-Mart fired Plaintiff on her day off through Wal-Mart's automated system because Wal-Mart claimed Plaintiff had accrued 11 attendance occurrences. These occurrences, however, were all unwarranted.

42. Plaintiff received the bulk of these attendance occurrences because she worked the same shift as her other CAP Team 1 coworkers, at the instruction of her supervisor, while the electronic system expected her to work from 6:00 am to 3:00 pm. Thus, each time she clocked out at or around 1:00 pm, the system gave her a 0.5 attendance point for leaving early. Plaintiff also received one of these points for approved leave she took to observe Eid al-Adha, a religious holiday.

43. Since she began working at Store 2065, Plaintiff has been discriminated against and treated differently than her colleagues. In the end, after Plaintiff reported discrimination to Wal-Mart's corporate office, Wal-Mart assessed her attendance points that her colleagues were not assessed, even though she worked the same schedule as her colleagues. Wal-Mart also assessed Plaintiff a full attendance point for an approved leave required to observe a religious holiday. Moreover, although Wal-Mart policy requires Wal-Mart to coach employees who reach 9 attendance points so that they have an opportunity either to correct absences that have been

incorrectly assessed or to alter their attendance problems before reaching 11 attendance points, Wal-Mart did not provide Plaintiff with any such coaching.

44. In all of the ways described above, Wal-Mart discriminated against Plaintiff because of her religion and national origin, in violation of Title VII of the Civil Rights Act of 1964.

45. On or about February 8, 2018, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), a copy of which is attached hereto as <u>Exhibit 1</u> and incorporated by reference. The EEOC issued a Notice of Right to Sue on this charge on or about August 14, 2018, a copy of which is attached hereto as <u>Exhibit 2</u>.

46. Plaintiff has unsuccessfully attempted to find comparable work since her wrongful termination by Defendants. Eventually, due to lack of viable employment opportunities and income, Plaintiff was forced to move away from Knoxville and her family and now resides in Nashville, Tennessee where she is living with friends. Because she has no high school diploma, and has been unable to find work due to the lack of a high school diploma, Plaintiff, at the age of 54, has enrolled in high school equivalency classes in order to obtain her diploma.

## COUNT I
**(Violation of Title VII - Discrimination)**

47. All prior paragraphs are incorporated as though fully set forth herein.

48. The foregoing conduct violated Title VII of the Civil Rights Act of 1964.

49. Wal-Mart discriminated against Plaintiff by fostering and perpetuating a hostile work environment wherein Plaintiff's co-workers and managers harassed and intimidated Plaintiff because of her religion and national origin.

50. Wal-Mart also discriminated against Plaintiff by treating her differently than her co-workers, including by demanding textual proof of her religious restrictions, by manipulating her schedule, and by assessing attendance points on days when she worked the shift that her manager told her to work and that her colleagues worked. Wal-Mart treated Plaintiff differently than her co-worker in these and other ways because of Plaintiff's religion and national origin.

51. Finally, Wal-Mart discriminated against Plaintiff because of her religious beliefs and national origin by terminating her because of the restrictions that she observed because her religion required her to do so.

## COUNT II
### (Violation of Title VII – Retaliation)

52. All prior paragraphs are incorporated as though fully set forth herein.

53. The foregoing conduct violated Title VII of the Civil Rights Act of 1964.

54. As described above, Plaintiff had to contact Wal-Mart's corporate office to address discrimination by her store's management, and Wal-Mart's corporate office ultimately intervened and reprimanded the store's management.

55. Thereafter, Defendants' store management fostered a hostile workplace, leading to Plaintiff's loss of work hours, loss of co-worker assistance, assessment of attendance points despite performing the same schedule as her co-workers and as her direct manager told her to perform, and ultimately termination.

56. Defendants undertook these adverse employment actions in retaliation for Plaintiff's exercise of her Title VII right to seek to address discrimination in the workplace by contacting Wal-Mart's corporate office after her store management discriminated against her.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A. All damages that Plaintiff has sustained as a result of Wal-Mart's conduct, including back pay, front pay, general and special damages for lost compensation and job benefits that Plaintiff would have received but for the discriminatory practices of Wal-Mart;

B. Exemplary and punitive damages in an amount commensurate with Wal-Mart's ability to pay and to deter future conduct;

C. A declaratory judgment that the practices complained of in this Complaint are unlawful and violate 42 U.S.C. §§ 2000(e), *et seq.*, Title VII of the Civil Rights Act of 1964;

D. Costs incurred, including reasonable attorneys' fees, to the extent allowable by law;

E. Pre-Judgment and Post-Judgment interest, as provided by law; and

F. Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: November 7, 2018                  Respectfully submitted,

/s/ Jerry E. Martin
**JERRY E. MARTIN (No. 20193)**
**JOSHUA A. FRANK (No. 33294)**
BARRETT JOHNSTON MARTIN & GARRISON, LLC
Phillips Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
jmartin@barrettjohnston.com
jfrank@barrettjohnston.com