UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FADUMO SARDEYE,<br><br>  Plaintiff,<br><br>v.<br><br>WAL-MART STORES EAST, LP, et al.,<br><br>  Defendants. | Case No. 3:18-cv-01261<br><br>Judge Eli J. Richardson<br>Magistrate Judge Alistair E. Newbern |

### MEMORANDUM ORDER

Plaintiff Fadumo Sardeye alleges that Defendants Wal-Mart Stores East, LP, and Walmart Inc. (collectively, "Walmart") discriminated against her when she worked at their Knoxville, Tennessee store in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e, et seq. (Doc. No. 1.) Now before the Court is Walmart's motion to transfer venue to the Eastern District of Tennessee for the convenience of the parties under 28 U.S.C. § 1404(a) (Doc. No. 18), to which Sardeye has responded in opposition (Doc. No. 20). For the reasons that follow, the motion to transfer will be denied.[1]

---

[1] A motion to transfer venue under 28 U.S.C. § 1404(a) "is a non-dispositive pretrial matter that a Magistrate Judge may determine pursuant to 28 U.S.C. § 636(b)(1)(A)." *Siteworks Sols., LLC v. Oracle Corp.*, No. 08-2130, 2008 WL 4415075, at *1 n.1 (W.D. Tenn. Sept. 22, 2008); *see also Hernandez v. Curtin*, No. 08-cv-14037, 2009 WL 94760, at *1 n.1 (E.D. Mich. Jan. 13, 2009) (same).

**I.     Background**

   **A.     Factual Background**[2]

Sardeye, who is a devout Muslim, worked at Walmart store number 1561 in Memphis, Tennessee (the Memphis store), from 1999 until 2014. (Doc. No. 1.) During those fifteen years, Walmart accommodated her religious practices by excusing her from working in the grocery department or as a cashier so that she did not have to handle alcohol or pork products and allowing her to use vacation days to observe certain religious holidays. (*Id.*) In 2014, Sardeye decided to move to Knoxville, where her daughters lived. (*Id.*) Before moving, she visited Walmart store number 2065 in Knoxville (the Knoxville store) and spoke with a human resources representative. (*Id.*) Sardeye explained the restrictions on her work necessitated by her religious beliefs, explained how the Memphis store had accommodated those restrictions for many years, and asked if the Knoxville store would similarly accommodate her if she transferred her employment. (*Id.*) The representative said that it would be "no problem" for the Knoxville store to accommodate Sardeye in the same ways that the Memphis store had done. (*Id.* at PageID# 3, ¶ 20.)

Sardeye began working at the Knoxville store in October 2014. (Doc. No. 1.) Despite the assurance that it would be no problem to accommodate her religious restrictions, Sardeye soon encountered difficulties. For example, Sardeye was promoted to a team of workers responsible for restocking shelves in the general goods and grocery departments, even though her religious restrictions prohibited her from handling groceries. (*Id.*) Sardeye reminded her supervisors of this restriction, and they allowed her to stock only general goods. (*Id.*) But Sardeye's "coworkers became hostile and intimidating to [her] because of the fact that they had to stock in the grocery

---

[2]     The facts in this section are drawn from Sardeye's complaint (Doc. No. 1) and taken as true for purposes of the pending motion to transfer venue.

department and general goods departments" while she only stocked general goods. (*Id.* at PageID# 4, ¶ 26.) Rather than addressing her coworkers' behavior directly, Knoxville store manager Willie Vestal encouraged Sardeye to quit her team assignment. (Doc. No. 1.) Sardeye refused. (*Id.*) Her coworkers continued to complain and harass her about her religious accommodation, telling Sardeye "that she should act like her 'Iraqi Muslim' coworkers, who did handle pork products and alcohol." (*Id.* at PageID# 5, ¶ 28.)

In April 2016, Vestal called Sardeye to his office, "demanded that she bring [him] textual proof from the Quran that she could not touch pork products or alcohol[,]" and told her that she would not be allowed to return to work until she did so. (*Id.* at PageID# 5, ¶ 29.) Sardeye complained to "the Market Human Resources Manager, Charlotte Boyd, who ultimately sided with Mr. Vestal and confirmed that [Sardeye] needed to submit paperwork in support of her religious restrictions." (*Id.* at PageID# 5, ¶ 30.) Sardeye wrote a letter to Walmart's corporate office and its global ethics department "detailing the discriminatory actions that [she] was facing from her store management" and "assert[ing] her rights under Title VII[.]" (*Id.* at PageID# 5, ¶ 31.) In response, Walmart's corporate office sent an investigator to the Knoxville store. (Doc. No. 1.) The investigator verbally reprimanded the store managers, who promised to accommodate Sardeye's religious restrictions. (*Id.*)

Sardeye continued to experience discriminatory treatment. The Knoxville store reduced her work hours and frequently assigned her to work alone, without support. (*Id.*) She also experienced scheduling issues. (*Id.*) In 2017, Sardeye took approved vacation days to observe Ramadan. (*Id.*) On the day before she returned to work, Walmart called her to confirm that she should resume her normal shift from 4 a.m. to 1 p.m. (*Id.*) But when she arrived at work the next day, she found that she had not been added back to the schedule. (*Id.*) This continued for several

weeks, and each day her managers had to manually override the Walmart employee scheduling system to allow Sardeye to work. (*Id.*) Eventually, Sardeye was added back to the schedule, but the system indicated that she was to work from 6 a.m. to 3 p.m. instead of her usual shifts from 4 a.m. to 1 p.m. (*Id.*) Sardeye asked her supervisor what her schedule was, and he instructed her to work from 4 a.m. to 1 p.m. regardless of what the scheduling system said. (*Id.*) After several days of working from 4 a.m. until 1 p.m., Sardeye noticed that the scheduling system had marked her as absent for the days she had worked. (*Id.*) She spoke to her managers about this, and they promised her that the absences were a mistake and would be fixed. (*Id.*)

Sardeye continued to work full shifts from 4 a.m. to 1 p.m. as instructed by her managers. (*Id.*) But because Walmart's attendance system showed her schedule as 6 a.m. to 3 p.m., the system recorded an early departure every day that she left at 1 p.m. and assigned her "a 0.5 attendance point[.]" (*Id.* at PageID# 7, ¶ 39.) Sardeye also received a full 1.0 attendance point for taking a day off to observe Eid al-Adha, a religious holiday, even though Walmart had approved the absence. (Doc. No. 1.) On November 15, 2017, Walmart fired Sardeye because she had accrued 11 attendance points. (*Id.*) Sardeye maintains that all of these points were unwarranted. (*Id.*) Despite company policy requiring Walmart to coach employees who accrue 9 attendance points—providing them with an opportunity to correct mistakenly recorded absences or to correct their own behavior before reaching 11 points—Walmart did not provide Sardeye the required coaching before terminating her employment. (*Id.*)

Sardeye was not able to find comparable work in Knoxville, and she now resides in Nashville, Tennessee. (*Id.*)

**B.     Procedural History**

Sardeye filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on or around February 8, 2018. (Doc. No. 1-2.) The EEOC mailed Sardeye

4

a right-to-sue letter on August 14, 2018. (Doc. No. 1-3.) Sardeye initiated this action on November 7, 2018, alleging that Walmart discriminated and retaliated against her in violation of Title VII. (Doc. No. 1.) She seeks a declaratory judgment as well as compensatory and punitive damages. (*Id.*)

Walmart answered Sardeye's complaint (Doc. No. 15) and filed a motion to transfer venue (Doc. No. 18). Walmart does not dispute that Title VII's broad venue provision allows Sardeye to bring suit in this district. (Doc. No. 19.) Instead, Walmart argues that transfer to the Eastern District of Tennessee is appropriate under 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interest of justice. (*Id.*) Sardeye disagrees, arguing that this district is at least as convenient and that her choice of forum deserves considerable deference. (Doc. No. 20.)

**II.     Legal Standard**

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The purpose of a transfer under this provision "is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (alteration in original) (quoting *Cont'l Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26, 27 (1960)). However, the Supreme Court has explained that § 1404(a) only "provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Id.* at 645–46. Transfer under § 1404(a) is therefore "inappropriate where it would serve only to transfer the inconvenience from one party to the other." *Coleman v. Dollar Tree Stores, Inc.*, No. 3–13–0069, 2013 WL 1775447, at *3 (M.D. Tenn. Apr. 25, 2013).

5

"[D]istrict courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate." *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (quoting *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994)); *see also Phelps*, 30 F.3d at 663 (a district court's determination regarding transfer under § 1404(a) is reviewed only for abuse of discretion). In considering a motion to transfer under § 1404(a), "'a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of interests of justice.'" *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2006) (quoting *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991)). Courts in this district recognize that factors relevant to this transfer analysis include: "(1) the location of willing and unwilling witnesses; (2) the residence of the parties; (3) the location of sources of proof; (4) the location of the events that gave rise to the dispute; (5) systemic integrity and fairness; and (6) the plaintiff's choice of forum." *Stewart v. Am. Eagle Airlines, Inc.*, No. 3:10–00494, 2010 WL 4537039, at *2 (M.D. Tenn. Nov. 3, 2010) (quoting *Oakley v. Remy Int'l, Inc.*, No. 2:09–0107, 2010 WL 503125, at *4 (M.D. Tenn. Feb. 5, 2010)).

The party requesting transfer under § 1404(a) bears the "substantial" burden of proving that transfer is warranted. *Smith v. Kyphon, Inc.*, 578 F. Supp. 2d 954, 958 (M.D. Tenn. 2008). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* (alteration in original) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

**III.    Analysis**

Because there is no dispute that Sardeye might have brought this action in the Eastern District of Tennessee,[3] the Court may begin its analysis by considering whether a transfer serves the purpose of § 1404(a). *See Johnson v. UMG Recordings, Inc.*, No. 3:17-cv-01548, 2018 WL 4111912, at *5 (M.D. Tenn. Aug. 29, 2018). The primary factors in dispute have to do with the locations of witnesses, evidence, and relevant events, as well as the public interest. As explained below, Walmart has not shown that these or any other factors weigh strongly in favor of transfer to the Eastern District.

   **A.     Location of Willing and Unwilling Witnesses**

Walmart's primary argument in favor of transfer is that Knoxville is a more convenient location for all or most of the witnesses in this case. (Doc. No. 19.) Specifically, Walmart points to fourteen current employees and three former employees in Eastern Tennessee who are likely to testify as witnesses at trial and would have to travel approximately 180 miles from Knoxville to

---

[3]    An action "might have been brought" in another court for purposes of 28 U.S.C. § 1404(a) if: (1) the court "could exercise original jurisdiction over the case;" (2) the court "would have personal jurisdiction of the defendants;" and (3) "venue would be proper in that court." *Zimmer Enters., Inc. v. Atlandia Imps., Inc.*, 478 F. Supp. 2d 983, 990 (S.D. Ohio 2007). Title VII provides that:

> Each United States district court . . . shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3). The original jurisdiction and venue requirements are therefore satisfied, and there is no argument that the Eastern District of Tennessee would lack personal jurisdiction over Walmart.

7

Nashville to do so. (*Id.*) Sardeye responds that Walmart may compel its employees to testify and that there are six witnesses who worked with her in the Memphis store for whom Nashville, which is approximately 212 miles from Memphis, is more convenient than Knoxville, nearly 400 miles away. (Doc. No. 20.)

Witness convenience "is one of the most important factors in the transfer analysis[,]" and Sardeye is correct that it is the convenience "of *non-party* witnesses, as opposed to employee witnesses," that most concerns the Court. *Kyphon, Inc.*, 578 F. Supp. 2d at 963 (emphasis in original); *see also* 15 Charles Alan Wright, et al., *Federal Practice and Procedure* § 3851 (4th ed. updated Aug. 2019) ("[T]he convenience of witnesses who are employees of a party is entitled to less weight because that party can obtain their presence at trial."). Moreover, "[t]he determination of the convenience of witnesses is not merely a 'head count,' but includes a consideration of the importance of each witness . . . ." *Stewart*, 2010 WL 4537039, at *2 (quoting *Oakley*, 2010 WL 503125, at *4); *see also* 15 Charles Alan Wright, et al., *Federal Practice and Procedure* § 3851 (explaining that this factor should not "become 'a battle of numbers'" and does not turn "on which party can present a longer list of possible witnesses located in its preferred district").

Walmart argues that former employees Grace Mynatt (a co-manager who terminated Sardeye), Jason Butler (a co-manager whom Sardeye named in an ethics complaint), and Gary Johnson (one of Sardeye's supervisors) are "potential key witnesses" who could testify about Sardeye's employment, attendance, and interactions with other employees and managers at the Knoxville store. (Doc. No. 19, PageID# 84.) Walmart also argues that fourteen current employees could testify about Sardeye's attendance, employment, and termination and Walmart's efforts to accommodate her religious restrictions in Knoxville. (Doc. No. 19.) All of these witnesses, Walmart argues, reside closer to Knoxville than Nashville. (*Id.*) Sardeye, meanwhile, argues that

8

six individuals she worked with at the Memphis store, including supervisors and managers, could testify about Walmart's prior accommodation of her religious restrictions and her satisfactory attendance during the fifteen years she worked for Walmart in Memphis. (Doc. No. 20.) This testimony is important, Sardeye argues, because Walmart has raised the hardship of accommodating her religious practices as an alternative affirmative defense and has argued that it fired her for habitually leaving work early. (*Id.*)

Considering each of these witnesses, their geographic location, and the importance of their potential testimony, the Court finds that this factor does not clearly weigh in favor of transfer to the Eastern District. There are likely to be important witnesses on both ends of the State of Tennessee and, while transfer to the Eastern District would eliminate the burden of travel for Walmart's witnesses, it would double that burden for Sardeye's witnesses. *See Rice v. PetEdge, Inc.*, 975 F. Supp. 2d 1364, 1374 (N.D. Ga. 2013) (witness convenience was "not sufficient to override plaintiff's chosen forum" where transfer "would subject plaintiff's witnesses to the same inconveniences of travel that defendant seeks to avoid"). Forcing Sardeye "to absorb the same travel-related inconvenience that [Walmart] wish[es] to avoid" amounts to "a shift in inconvenience between the parties" that is not permissible under § 1404(a). *Kaldy v. Urshow.tv, Inc.*, No. 2:16-cv-54, 2017 WL 104148, at *7 (E.D. Tenn. Jan. 10, 2017); *see also Coleman*, 2013 WL 1775447, at *3 (finding that transfer under § 1404(a) "is inappropriate where it would serve only to transfer the inconvenience from one party to the other").

### B.   Residence of the Parties

Walmart has not argued that this factor weighs in favor of transfer to the Eastern District. Sardeye resides in Nashville, while Walmart is incorporated in Delaware, headquartered in Arkansas, and has stores throughout Tennessee. (Doc. No. 1.) The Court finds that this factor weighs against transfer under § 1404(a).

9

### C. Location of Sources of Proof

Walmart argues that "[a]ll of the documents relating to [Sardeye's] employment are located in Knoxville," including "at least six boxes containing attendance archive reports . . . ." (Doc. No. 19, PageID# 85, 86.) But Sardeye is correct that "location of documents is generally a neutral factor" in the § 1404(a) analysis because documents may easily be scanned and electronically produced, faxed, or delivered overnight. *Dan's Gourmet Spot, LLC v. Versa Mktg., Inc.*, No. 3:16-cv-02487, 2017 WL 897547, at *7 (M.D. Tenn. Mar. 7, 2017) (citing *Oakley*, 2010 WL 503125, at *5); *cf. Johnson*, 2018 WL 4111912, at *8 (collecting cases for the proposition that location of records carries "negligible weight"). Walmart has not pointed to any circumstances justifying departure from the general rule in this case. The Court therefore finds that this factor is neutral.

### D. Location of Events that Gave Rise to the Dispute

The events that gave rise to this employment dispute occurred almost entirely in Knoxville. (Doc. No. 1.) While Sardeye's prior employment with Walmart in Memphis may be relevant to her claims, Knoxville remains the "center of gravity" in this case. *Stewart*, 2010 WL 4537039, at *3 (citing *Oakley*, 2010 WL 503125, at *5). This factor therefore favors transfer to the Eastern District. *See Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 880 (M.D. Tenn. 2019). Sardeye's reliance on *Alexander v. University of Memphis*, No. 3:17-1453, 2018 WL 3719587 (M.D. Tenn. June 4, 2018), to argue otherwise is misplaced. The court in *Alexander* addressed a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3) and held only that the subject venue was not improper under Title VII. *Id.* at *2. The court did not conduct any analysis under § 1404(a), and *Alexander* is therefore inapplicable to this Court's transfer analysis.

### E. Systemic Integrity, Fairness, and Other Public-Interest Concerns

Courts in this district recognize that public-interest factors relevant to the § 1404(a) analysis include: "(1) the enforceability of the judgment; (2) practical considerations affecting trial

management; (3) docket congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law." *Kyphon, Inc.*, 578 F. Supp. 2d at 962. Walmart's primary argument that public-interest factors support its motion to transfer is that the Eastern District has an interest in deciding local controversies like this one. (Doc. No. 19.) However, the only case Walmart cites in support of this argument is not an employment action but an environmental case concerning the impact of coal mining permits. As the court in that case explained, "'environmental cases often provide a particularly strong basis for finding a localized interest in the region touched by the challenged action.'" *Defs. of Wildlife v. Jewell*, No. 2:13-00039, 2013 WL 6179953, at *5 (M.D. Tenn. Nov. 26, 2013) (quoting *Sierra Club v. U.S. Dep't of State*, No. C 09-04086, 2009 WL 3112102, at *3 (N.D. Cal. Sept. 23, 2009)). This case does not present such geographically relevant issues, and Sardeye is correct that, in general, the presentation of federal questions "lessen[s] localized concerns" for purposes of § 1404(a). *Oakley*, 2010 WL 503125, at *6.

Walmart's remaining argument that transfer is warranted to protect Sardeye's own interests, under Title VII, in drawing jurors from the community where the discrimination occurred entirely misses the mark. Title VII's broad venue provision allows plaintiffs to bring suit "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed," among other places. 42 U.S.C. § 2000e-5(f)(3). This provision "embodies a public policy determination that Title VII plaintiffs should have a choice of where to bring suit." *Kyphon, Inc.*, 578 F. Supp. 2d at 961. By empowering plaintiffs to choose between venues, Title VII also protects a plaintiff's ability to choose "to have her case tried by a jury of peers drawn from the community in which the discrimination allegedly occurred[.]" *Id.* at 968–69; *see also Sir v. Diagnostica Stago, Inc.*, No. 3:16-cv-03142, 2017 WL 4310112, at *3 (M.D. Tenn. Sept. 28, 2017)

11

(quoting *id.*). Walmart's attempt to turn this protection into a proscription is wholly unsupported. Walmart has not identified any legal authority to support its argument that this Court, in the name of public interest, should ignore Title VII's emphasis on the plaintiff's choice of forum and force Sardeye to litigate in the venue where the employment discrimination at issue occurred.

On balance—and in the absence of any further public-interest arguments from Walmart—the Court finds that the relevant public-interest factors weigh against transfer and in favor of respecting Sardeye's choice of venue under Title VII. Both districts are equally well-versed in federal and Tennessee law and, while the Eastern District may have some interest in adjudicating alleged discriminatory conduct by local actors, this district likewise has an interest in protecting the rights of its residents to be free from such conduct.

### F. Sardeye's Choice of Forum

Finally, Walmart argues that Sardeye's choice of venue is entitled to less deference than usual because the operative facts in this case occurred elsewhere. (Doc. Nos. 19, 21.) Ordinarily, a "[p]laintiff's choice of forum should be given 'great' or 'substantial' weight when considering whether to transfer a case under § 1404(a)." *United States v. Cinemark USA, Inc.*, 66 F. Supp. 2d 881, 887 (N.D. Ohio 1999) (quoting *Picker Int'l, Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 573 (N.D. Ohio 1998), and *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Guarantee Tr. Life Ins. Co.*, 8 F. Supp. 2d 1008, 1010 (N.D. Ohio 1998)). Even assuming Walmart is correct that Sardeye's choice of venue is entitled to lesser weight here because the majority of events took place in Knoxville, this factor still weighs against transfer. *See Allenberg Cotton Co. v. Staple Cotton Coop. Ass'n*, No. 06-2449, 2007 WL 2156352, at *2 (W.D. Tenn. July 25, 2007) (affording plaintiff's choice of forum "little weight" against transfer where case had "limited connection with the [plaintiff's chosen] forum").

## IV. Conclusion

Considering all of the relevant factors together, the Court finds that Walmart has not carried its burden to show that the balance tips in favor of transfer under 28 U.S.C. § 1404(a). *See Kyphon, Inc.*, 578 F. Supp. 2d at 958. Because the parties and witnesses in this action are found across Tennessee, travel will be unavoidable. Walmart's motion, if granted, would simply shift most or all of the inconvenience and expense of that travel onto Sardeye. That is not a valid basis for transfer under § 1404(a). *See Coleman*, 2013 WL 1775447, at *3; *Rice*, 975 F. Supp. 2d at 1374. Accordingly, Walmart's motion to transfer venue (Doc. No. 18) is DENIED.

It is so ORDERED.

*[signature]*
ALISTAIR E. NEWBERN
United States Magistrate Judge